FILED

2022 Feb-03  AM 11:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **BRITTANY WATKINS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| | ) Civil Action Number |
| **v.** | ) **5:21-cv-01049-AKK** |
| | ) |
| **LLOYD AUSTIN, SECRETARY** | ) |
| **OF DEFENSE,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

Brittany Watkins alleges that the Department of Defense Missile Defense Agency, her former employer, retaliated against her for engaging in protected activities and discriminated against her on the basis of pregnancy, disability, and race in violation of Title VII, the Family and Medical Leave Act, the Rehabilitation Act, and the Pregnancy Discrimination Act. Her complaint includes nine distinct claims against the Secretary of Defense. The Secretary has moved to dismiss all but one of Watkins's claims, arguing that these claims are either time-barred, not subject to the court's jurisdiction, or fail to state a plausible basis for relief. For the reasons below, the Secretary's motion, which is fully briefed, *see* docs. 19, 22, 23,[1] is due to

---

[1] Watkins filed a surreply to the motion. Although surreplies are generally disfavored, *see First Specialty Ins. Corp. v. 633 Partners, Ltd.*, 300 F. App'x 777, 788 (11th Cir. 2008), the court has read and considered Watkins's surreply in rendering its opinion.

be denied as to Watkins's pregnancy and disability discrimination claims for allegedly discriminatory conduct occurring after April 27, 2019, but is due to be granted in all other respects.

## I.

The DoD hired Watkins as an operations research analyst at the Missile Defense Agency in September 2017 in a three-year Missile Defense Career Development Program. Doc. 12-1 at 3-4.[2] MDA hired approximately 100 MDCDPs in the same class as Watkins, and the program required Watkins to rotate through various organizations within MDA and complete certain training. *Id.*

Watkins pleads that she encountered various forms of mistreatment at MDA. *See generally id.* Related to her pregnancy, Watkins alleges that she needed access to lactation facilities when she started working at MDA. *Id.* at 5. Watkins, however, was unable to access a lactation room during an all-day introductory training. *Id.* Moreover, Hetal Patel, Watkins's direct supervisor, told Watkins that she should only use lactation facilities during her two fifteen-minute breaks and her thirty-minute lunch break. *Id.* at 5-6. Patel also told Watkins to schedule her visits to the lactation rooms on a shared calendar. *Id.* at 6. Perhaps because of the shared calendar, Watkins occasionally had to do work while in the lactation room, unlike

---

[2] The court treats Watkins's factual allegations as true for the purposes of analyzing the Secretary's partial motion to dismiss. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

other nursing mothers at MDA who used lactation facilities whenever they needed instead of only on their breaks or lunch period. *Id*. at 6-7.

Patel also denied Watkins's request to work an Alternate Work Schedule, an arrangement that allows MDA employees to have one fixed off day per bi-weekly pay period. *Id*. at 7. Although Patel cited Watkins's less than one-year tenure at MDA as the reason, other MDCDPs in Watkins's class were allowed to work an AWS. *Id*. And Patel also did not offer Watkins the option of "flexitour," an arrangement that would have allowed Watkins to establish her own fixed work schedule. *Id*.

In addition, Patel rejected Watkins's request to travel to other MDA sites, telling Watkins that only more senior employees could do so. *Id*. at 8. Other MDCDPs, however, traveled to these sites for up to three weeks at a time. *Id*. Patel and David Biron, another of Watkins's supervisors, also told Watkins that she could not participate in other trainings or would receive no compensation for her time if she did. *Id*. at 8-9. Other similarly-situated employees attended these trainings during working hours. *Id*. And Patel denied Watkins's request to use fitness leave time to exercise, citing Watkins's trips to the lactation facilities as the justification. *Id*. at 9.

Around a year after she started at MDA, Watkins's assignment placed her under Biron's supervision. *Id*. at 10. Watkins's experience did not improve. For

example, when she asked Biron if he would honor Patel's word that Watkins could work an AWS after one year, Biron denied this request even though every other civilian employee under his direction, except for Watkins and "Ms. Jefferson," had an AWS. *Id.* Biron also denied Watkins's request to work over forty hours per week to "bank time" for an upcoming maternity leave, an arrangement Biron provided to Jefferson. *Id.* at 10-11. Watkins raised the AWS and bank time issues again unsuccessfully when she had difficulty scheduling doctor's appointments outside of core working hours despite working a flexitour schedule. *Id.* at 11-12. And Biron, like Patel, denied Watkins fitness leave. *Id.* at 10.

Soon after the denials of these requests, Watkins suffered from a pregnancy-related complication that required a visit to the emergency room. *Id.* at 13. After a follow-up visit with her personal doctor, Watkins provided documentation stating that she needed bi-weekly ultrasounds due to this serious medical issue. *Id.* Watkins suffered two more medical episodes, and she complained to her doctor about her stress at work. *Id.* Based on her doctor's suggestion that she reduce work-related stress, Watkins asked Patel if she could work an AWS to accommodate her additional doctor's appointments and reduce overall stress. *Id.* Patel denied this request and told Watkins instead to act like one of Watkins's coworkers who "was doing extremely well and had children." *Id.* at 13-14.

Tragically, one week later, Watkins lost her child shortly after delivery by emergency C-section. *Id*. at 16. Watkins took twelve weeks of unpaid FMLA leave. *Id*.[3] Yet Watkins claims her supervisors expected her to complete her annual performance appraisal without pay, even though other similarly-situated MDA employees received pay to complete their performance reviews. *Id*.

Watkins received diagnoses for medical conditions during her FMLA leave that required her to ask for accommodations. In particular, she asked for a sit-stand desk after a diagnosis of chronic migraines, chronic back pain, and multiple disc degeneration. *Id*. Patel denied the request, even though at least one other MDA employee received this accommodation for a medical condition. *Id*. Also, a postpartum depression diagnosis and a doctor's recommendation that Watkins work from home for several weeks led Watkins to submit a request to either telework or work an AWS after she completed her FMLA leave. *Id*. at 17. Patel failed to forward Watkins's request to the disability program manager. *Id*.

Shortly after she returned from her FMLA leave, Watkins received a rating of unsatisfactory on her annual performance appraisal. *Id*. at 18. The appraisal penalized Watkins for failing to complete some work assignments during her FMLA

---

[3] Watkins pleads that Patel never told her she could take up to twelve weeks unpaid medical leave under the FMLA. Doc. 12-1 at 15. Instead, Patel told Watkins six weeks, plus an additional two weeks if Watkins delivered via C-section. *Id*. Patel later added that Watkins was unlikely to receive advanced sick leave because Watkins was "already in the hole." *Id*.

leave.  *Id*.  That same day, Watkins emailed MDA staff about filing an EEO complaint.  *Id*.  Watkins also informed Patel directly that she intended to file an EEO complaint.  *Id*. at 19.  Approximately three weeks after her conversation with Patel, Watkins filed an informal EEO complaint.  *Id*. at 20.  And shortly thereafter, Patel met with Watkins, announced to others in the meeting that Watkins had filed an EEO complaint, and gave Watkins a notice of termination letter.  *Id*.

After her discharge, Watkins filed an internal grievance related to her annual performance appraisal, which MDA denied.  *Id*.  Watkins also subsequently filed her formal EEO complaint, alleging retaliation for previous EEO activity and discrimination on the basis of her Caucasian race, color, American national origin, sex, disability, and pregnancy.  *See* doc. 14-2.[4]  The DoD denied Watkins's claims, in part, because of Watkins's failure to respond to the investigator's request for information.  *See* doc. 14-3.  This lawsuit followed.

## II.

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Rule 8 does not require plaintiffs to plead "detailed factual allegations" fully outlining the merits of their

---

[4] In addition to the various requests Patel and Biron denied, Watkins also alleges Patel made racially discriminatory comments. Allegedly, Patel told Watkins, in reference to an election, "you're a white female, so you might not care about this, but us minority females really care about a female in office." Doc. 12-1 at 9. Patel also made remarks about Watkins's weight and appearance, and once told Watkins that she was "just having a blonde moment." *Id*. at 9, 12, 15.

6

case. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). A complaint states a facially plausible claim "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *id*, and "[t]his standard 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the claim," *Jackson v. JPay, Inc.*, 851 F. App'x 171, 172 (11th Cir. 2021) (quoting *Twombly*, 550 U.S. at 556).

## III.

Watkins's claims fall into four main categories: (A) pregnancy—discrimination claims based on alleged disparate treatment (Count 1), a failure to accommodate (Count 2), and discriminatory discharge (Count 8); (B) retaliation—a standalone claim (Count 3)[5] and a claim under the FMLA (Count 6)[6]; (C) disability—discrimination claims based on alleged disparate treatment (Count 4), a failure to accommodate (Count 5), and discriminatory discharge (Count 7); and (D) race—discrimination claims based on alleged disparate treatment and discriminatory

---

[5] The Secretary has not moved to dismissed Count 3. *See* doc. 14.

[6] Count 6 also includes a claim under the FMLA alleging interference with Watkins's ability to exercise her FMLA rights.

7

discharge (Count 9). *See* doc. 12-1. The court will address each category of claim in turn.

## A.

Watkins pleads pregnancy discrimination in Counts 1, 2, and 8. Allegedly, MDA violated Title VII and the Pregnancy Discrimination Act, by (1) treating her differently than other similarly-situated non-pregnant employees, (2) failing to accommodate medical and scheduling needs related to her pregnancy while regularly accommodating other employees with non-pregnancy-related medical or limiting conditions, and (3) discharging her. Doc. 12-1 at 21-28, 40-41. The Secretary argues that these claims are procedurally barred or do not state a valid claim for relief. Doc. 14 at 7-13.

## 1.

Title VII prohibits employment discrimination on the basis of sex, and "[t]he Pregnancy Discrimination Act amended Title VII to provide that discrimination on the basis of sex includes discrimination 'on the basis of pregnancy, childbirth or related medical conditions.'" *Holland v. Gee*, 677 F.3d 1047, 1054 (11th Cir. 2012) (citing 42 U.S.C. § 2000e(k)). A plaintiff can prevail on a pregnancy discrimination claim by showing "that her pregnancy 'was a motivating factor' for an employment decision." *Id*. at 1055 (citing 42 U.S.C. § 2000e–2(m)). A plaintiff meets this burden, and establishes a *prima facie* case of pregnancy discrimination, if she can

show that she was pregnant, qualified to perform her job, subjected to an adverse employment action, and that the employer treated differently other similarly-situated non-pregnant employees. *Id*. (citing *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004)).

Prior to pursuing judicial relief under Title VII, "federal employees are required to initiate administrative review of any alleged discriminatory or retaliatory conduct with the appropriate agency within 45 days of the alleged discriminatory act." *Shiver v. Chertoff*, 549 F.3d 1342, 1344 (11th Cir. 2008) (citing 42 U.S.C. § 2000e–16(b); 29 C.F.R. § 1614.105(a)(1)).  An employee can extend this window by showing, *inter alia*, that she "was not notified of the time limits and was not otherwise aware of them," did not have actual or constructive knowledge of the discriminatory act, or was prevented from contacting an EEO counselor within 45 days by circumstances outside her control.  29 C.F.R. § 1614.105(a)(2).  But where a plaintiff failed to initiate contact with the EEOC regarding her claims within 45 days of an allegedly discriminatory act, and pleads nothing in her complaint regarding equitable tolling, her claims regarding that act are barred for a failure to exhaust administrative remedies.  *See Basel v. Sec'y of Def.*, 507 F. App'x 873, 875-77 (11th Cir. 2013); *Robinson v. Jojanns*, 147 F. App'x 922, 924 n.2 (11th Cir. 2005).

**2.**

Watkins says that she first inquired about filing an EEO complaint on June 11, 2019.  Docs. 12-1 at 2, 18; 19 at 3.  Therefore, in light of her failure to plead any basis for extension of the 45-day time limit, any claims based on allegedly discriminatory acts preceding April 27, 2019, are barred.  Indeed, Watkins concedes this point in her surreply, asserting that her claims for relief are limited to allegedly discriminatory conduct occurring after the April 27 cutoff date, including, most notably, her July 2019 discharge.  *See* docs. 12-1 at 21-28, 40-41; 23-1 at 2.  For the sake of clarity, however, the court states – as seemingly acknowledged by both parties – that Watkins is not entitled to relief as to Counts 1, 2, or 8 for any allegedly discriminatory conduct occurring before April 27, 2019.

**3.**

As to the post-April 27 period, Watkins has stated valid claims for relief under Title VII and the Pregnancy Discrimination Act.  Specifically, in support of her disparate treatment claim, Count 1, and her failure to accommodate claim, Count 2, Watkins has alleged that while on unpaid FMLA leave for pregnancy-related reasons between April 27 and June 4, 2019, MDA denied her requests to telework or work an AWS and required her to complete her performance appraisal.  *See* doc. 12-1 at 21-28.  Watkins also alleges that MDA treated more favorably several other employees with non-pregnancy-related medical conditions or scheduling needs by

granting them accommodations.  *Id*.  Additionally, as to her discriminatory discharge claim, Count 8, Watkins has alleged sufficient circumstantial evidence to allow the reasonable inference that her pregnancy and related medical conditions, viewed in context of the alleged "pattern or practice" of discrimination, were a motivating factor in her discharge.  *Id*. at 21-28, 40-41.  Accordingly, Watkins has made a *prima facie* showing of pregnancy discrimination sufficient to survive a motion to dismiss.  *See Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1354 (2015); *Holland*, 677 F.3d at 1054-55.

**B.**

Watkins alleges retaliation claims under the FMLA in Count 6.  In response to the motion to dismiss, Watkins concedes that "the state of the law as it now exists under 11th Circuit precedent" forecloses a private right of action and indeed deprives this court of jurisdiction to even consider her FMLA claims due to the government's sovereign immunity.  *See* doc. 19 at 14.  Undeterred, however, Watkins asks the court to intervene, arguing that the 2016 National Defense Authorization Act "threw a monkey wrench" into Congress's FMLA enforcement scheme.  *Id*. at 14-15.  Watkins says that under the old regime, government employees with more than a year of service, like her, could enforce their FMLA rights through an appeal to the Merit Systems Protection Board, while those with less than one year could enforce their FMLA rights in federal court.  *Id*.  Allegedly, the 2016 Act left employees who

had completed twelve months of service but were still on probationary status, like Watkins, unable to enforce their FMLA rights through either the MSPB or the courts. *Id*. To address this lack of remedy, Watkins asks the court to either exercise jurisdiction over her FMLA claims via a writ of mandamus, *id*. at 16-18 (citing 28 U.S.C. § 1361), or "fashion a new remedy" to correct Congress's "scrivener's error," *id*. at 18-20.

As the Supreme Court has noted, it is "a monstrous absurdity in a well organized government" that "the laws furnish no remedy for the violation of a vested legal right." *Kendall v. U.S. ex rel. Stokes*, 37 U.S. 524, 624 (1838); *Marbury v. Madison*, 5 U.S. 137, 163 (1803). But even if Watkins has identified a right without a remedy, the court lacks jurisdiction over her FMLA claims. *See Armstrong v. United States*, No. 21-10200, 2021 WL 6101492, at *1 (11th Cir. Dec. 21, 2021). Therefore, the court declines Watkins's request to exercise jurisdiction to create a new remedy. And since mandamus is a "drastic" remedy "only to be invoked in extraordinary situations," *In re BellSouth Corp.*, 334 F.3d 941, 953 (11th Cir. 2003) (citing *Will v. United States*, 389 U.S. 90, 96 (1967)), that request is also denied where, as here, the court is without jurisdiction to even consider Watkins's FMLA claims. Accordingly, Watkins's FMLA claims are due to be dismissed.

## C.

Watkins pleads in Counts 4, 5, and 7 that she suffered from several disabilities, including some related to her pregnancy, and that the Secretary discriminated against her on the basis of these disabilities, in violation of the Rehabilitation Act. Doc. 12-1 at 30-40. Allegedly, unlike her non-pregnant co-workers, Watkins's supervisor denied her request to telework or work an AWS, required her to complete assignments while on unpaid FMLA leave, denied her a sit-stand desk, and gave her an unsatisfactory evaluation and ultimately discharged her for failing to complete assignments while on FMLA leave. *Id*. The Secretary, in response, argues that Watkins has failed to adequately allege a disability. Docs. 14 at 10-12; 22 at 4-5.

## 1.

The Rehabilitation Act prohibits federal agencies from discriminating against employees on the basis of their disability. *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000). Rehabilitation Act claims are governed by the same standards as claims under the Americans with Disabilities Act. *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000). To establish a *prima facie* case of discrimination, a plaintiff must show "(1) a disability, (2) that she was otherwise qualified to perform the job, and (3) that she was discriminated against based upon the disability." *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004). Relevant here, a disability is defined as "a physical or mental impairment that substantially limits

one of more of the major life activities of an individual," such as "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102.  Pregnancy itself is not generally considered a disability, but "a pregnancy-related impairment may be considered a disability[] if it substantially limits a major life activity." *Jeudy v. Att'y Gen., Dep't of Just.*, 482 F. App'x 517, 520 (11th Cir. 2012) (citing 29 C.F.R. pt. 1630, App. § 1630.2(h)).

**2.**

Watkins claims that she suffered from disabilities in the form of postpartum depression, recovery from her C-section, chronic migraines, chronic back pain, disc degeneration, and a need to reduce stress from work, and that "each of these conditions substantially limit[ed] a major life activity." Doc. 12-1 at 30-31, 35. Although the Secretary is correct that Watkins's complaint "fails to include any allegations of specific limitations her alleged conditions caused," doc. 14 at 12,[7] Watkins has, at this stage, alleged sufficient factual content to allow the court to

---

[7] Watkins, in response, directs the court to paragraphs 85 and 86 of her complaint, in which she alleges that Patel's denial of her AWS request "reduced her ability to maintain focus and productivity in her work, caused lack of sleep, . . . poor appetite, . . . low productivity, the inability to care for herself, . . . and the inability to lift more than twenty-five pounds" from January to March 2019. Doc. 19 at 12-13 (citing doc. 12-1 at 14).  But these alleged limitations occurred prior to her post-pregnancy medical diagnoses, and are therefore irrelevant to the disabilities that form the basis for Watkins's Rehabilitation Act claims.

draw the reasonable inference that these alleged disabilities substantially limited at least one of the major life activities listed in 42 U.S.C. § 12102.  For example, Watkins's postpartum depression and chronic migraines may, as Watkins contends, have affected her ability to concentrate, care for herself, and continue in-person work.  And Watkins's recovery from her emergency C-section, along with her disc degeneration and back pain, may have limited her ability to stand, sit, lift, and work in the office without accommodations.  Whether Watkins can ultimately prove her claims is a matter for the Secretary to investigate through discovery.  And, of course, the Secretary is free to challenge Watkins's claims at summary judgment if the facts uncovered fail to establish a substantial limitation of a major life activity.  But, for now, Watkins has sufficiently pleaded a disability under the Rehabilitation Act, and the Secretary's motion to dismiss is due to be denied.

### D.

Finally, in Count 9, Watkins pleads a race discrimination claim.  Doc. 12-1 at 41-42.  In support of this claim, Watkins, who is Caucasian, relies on statements made by Patel, who is of Asian descent, that Watkins (1) might not understand minority women's desire to see women in elected office, (2) should try to act more like another female employee, who was of Asian descent and also had children, and (3) was having a "blonde moment."  *Id*.  Allegedly, these statements illustrate Patel's "discriminatory animus against white females."  *Id*.

15

**1.**

A plaintiff can establish a *prima facie* case of racial discrimination under Title VII by showing "(1) that she belongs to a protected class, (2) that she was subjected to an adverse employment action, (3) that she was qualified to perform the job in question, and (4) that her employer treated "similarly situated" employees outside her class more favorably." *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1220-21 (11th Cir. 2019). Here, however, Watkins's complaint references the race of other MDA employees only once: "Patel then added that Watkins should be 'more like Qiong' (Asian, Female) 'because she was doing extremely well and had children.'" Doc. 12-1 at 14. Watkins provides no other information about this woman's title, her responsibilities, her seniority, or her performance, and she fails to allege any other facts to suggest that she is similarly situated to Qiong. Moreover, Watkins does not allege that Patel treated Qiong more favorably than Watkins in any way. Thus, Watkins has failed to plead a claim via an alleged difference in treatment with a comparator.

**2.**

Absent evidence of a comparator, a plaintiff can establish a race discrimination claim by either alleging direct evidence of discriminatory intent or "demonstrat[ing] a 'convincing mosaic' of circumstantial evidence that warrants an inference of intentional discrimination." *Lewis*, 918 F.3d at 1220 n.6. "A

'convincing mosaic' may be shown by evidence that demonstrates, among other things, (1) suspicious timing, ambiguous statements, and other bits and pieces from which an inference of discriminatory intent might be drawn, (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis v. City of Union City, Georgia*, 934 F.3d 1169, 1185 (11th Cir. 2019) (internal citation omitted).

Watkins argues that she had pleaded this "convincing mosaic" of discriminatory intent through Patel's comment about Qiong, her statement that Watkins was "having a blonde moment," and her remark to Watkins that "[y]ou're a white female, so you might not care about this, but us minority females really care about a female in office." *Id.* at 13-14. There are several problems with this reasoning. To begin, Patel's suggestion that Watkins "be more like Qiong because she was doing extremely well and had children," does not provide circumstantial evidence of racial discriminatory intent. In fact, Patel's reference to Qiong's children suggests a comparison of the two women based on their status as mothers, rather than their race. Furthermore, Watkins does not plead that Patel's "minority females" and "blonde moment" comments were directly related to any adverse action taken against Watkins, and these two possibly distasteful comments alone do not create a "convincing mosaic from which an inference of discriminatory intent might be drawn." *Lewis*, 934 F.3d at 1185. And finally, Watkins's conclusory

17

allegations that "Asian employees and other minorities were treated differently than Watkins as they were afforded AWS, telework, fitness leave, training, uninterrupted FMLA leave, and not terminated for no reason" does not establish that Watkins "was terminated because of her race."  Doc. 12-1 at 41.  Watkins offers no factual content to support these allegations that would allow an inference of race discrimination. For example, the complaint does not identify the minority employees, their tenure with MDA – i.e., whether they were MDCDPs like Watkins or regular employees – and if Patel made or was involved in decisions related to their employment.

To close, Watkins "need not prove [her] case on the pleadings." *Speaker v. United States HHS CDC & Prevention*, 623 F.3d 1371, 1386 (11th Cir. 2010.  But to survive a motion to dismiss, Watkins must "provide 'enough factual matter (taken as true) to suggest' intentional race discrimination."  *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555). Watkins has failed to allege sufficient facts to "allow[] the court to draw the reasonable inference" that she faced disparate treatment because of her race. *Ashcroft*, 556 U.S. at 678.  Therefore, her race discrimination claim is due to be dismissed.

**IV.**

Accordingly, the Secretary's partial motion to dismiss, doc. 14, is due to be granted as to Counts 6 and 9 of Watkins's amended complaint and denied as to Counts 1, 2, 4, 5, 7, and 8.  A separate order effectuating this opinion follows.

**DONE** the 3rd day of February, 2022.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE